IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § § | Crim. No. 4:23-mj-84-KPJ-1 |
| THOMAS RICHARD GRASSIE (1), | | |
| Defendant. | | |

**OPINION AND ORDER**
**OF DETENTION PENDING TRIAL**

Defendant Thomas Richard Grassie ("Defendant") is charged in a Third Superseding Indictment with violating 18 U.S.C. § 371 (Conspiracy to Make False Statements to Mortgage Lending Businesses and Financial Institutions; Conspiracy to Make False Writings to the Federal Trade Commission) and 18 U.S.C. § 1014 (False Statements to Mortgage Lending Businesses and Federally Insured Institutions).[1] The United States moved to detain Defendant pending trial pursuant to 18 U.S.C. § 3142(f)(2). Upon consideration, the Court finds Defendant should be **DETAINED**.

**I.  LEGAL STANDARD**

"The Bail Reform Act provides that a person shall be released pending trial unless a judge finds that 'no condition or combination of conditions will reasonably assure the appearance of the

---

[1] Defendant is currently indicted in the Southern District of Texas. *See United States v. Campos, et al.*, 4:22-cr-33 (S.D. Tex. Jan. 1, 2022). Defendant is indicted with the following co-defendants: Heather Ann Campos, also known as Jill Turner; David Lewis Best, Jr.; Shayanne Edrington, also known as Laura Hall; Leslie Edrington, also known as Robin Smith; Melinda Munoz, also known as Melinda Garcia; Elvina Buckley; Stephen Laverne Crabtree; Steven Tetsuya Morizono, also known as Jeff Lucian; Albert Lugene Lim, also known as Ted Chen; John Taylor Blackmore; Blanka Uhrovcikova, also known as Blanka Williams; Jesus Alberto Adame Cordova; Kimberli Ann Tomman; Arleen Marie Grokett; and Luis Giancarlo Belevan. *See generally id.*

person as required and the safety of any other person and the community.'" *United States v. Villaurrutia*, 850 F. App'x 330, 331 (5th Cir. 2021) (per curiam) (quoting 18 U.S.C. § 3142(e)). A judicial officer may order a defendant detained pending trial upon satisfying two prerequisites. First, the officer must hold a hearing pursuant to a circumstance listed in 18 U.S.C. § 3142(f). *See United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992). Only criminal defendants whose charged offenses involve one or more of the following circumstances may be detained pending trial:

- a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

- an offense for which the maximum sentence is life imprisonment or death;

- an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*), or chapter 705 of title 46;

- any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more state or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses;

- any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive, or any other dangerous weapon, or involves a failure to register under 18 U.S.C. § 2250;

- any offense if there is a serious risk that such person will flee; or

- any offense if there is a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f).

Second, after a hearing, the judicial officer must determine whether the United States has shown by a preponderance of the evidence that "no condition or combination of conditions will

reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f)(2). Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

If, based on the foregoing factors, the judicial officer finds there are no conditions that would "reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer may order the criminal defendant detained pending trial. 18 U.S.C. § 3142(e); *see also United States v. Okhumale*, 813 F. App'x 936, 939 (5th Cir. 2020) (per curiam) (holding pretrial detention requires "the presence of one of the circumstances outlined in § 3142(f) *and* a determination under § 3142(e) that . . . no conditions imposed could either assure the appearance of the defendant or the safety of the defendant and community" (citing *Byrd*, 969 F.2d at 109–10))).

## II. PRETRIAL SERVICES REPORT[2]

Defendant advised he was born in Saskatchewan, Canada in 1951, and is approximately seventy-one (71) years old. Defendant reported he graduated from Walter Murray Collegiate in

---

[2] A Pretrial Services Report is a concise summary and conclusion of the pretrial investigation pertaining to the pretrial release of the criminal defendant. *See* 18 U.S.C. § 3154.

3

Saskatoon, Saskatchewan, Canada in 1970. Defendant reported he had prior residences as follows: Saskatoon, Saskatchewan, Canada from 1951 to 1971; Regina, Saskatchewan, Canada from 1971 to 1978; Calgary, Alberta, Canada for approximately six (6) months in 1978; Vancouver, British Columbia, Canada from approximately 1978 to 1981; Marin County, California from approximately 1984 to 1987; and Minneapolis, Minnesota from approximately 1987 to 2021. Defendant advised Pretrial Services he traveled throughout the United States for approximately six (6) to nine (9) months before settling in Plano, Texas. Defendant reported he has lived in Plano, Texas for approximately the last one and a half years (1.5) with his fiancé, Penny Cummings ("Ms. Cummings"). Defendant informed Pretrial Services he does not have any children with Ms. Cummings. Ms. Cummings advised Pretrial Services she has a daughter, Kaitlin Cummings (age 26), who resides with Defendant and Ms. Cummings.

Defendant advised he was previously married to Sheryl Spradley ("Ms. Spradley") from 1982 to approximately 2002 or 2003. Defendant reported he had three (3) children with Ms. Spradley including: Nathan Grassie (age 35), who resides in Minneapolis, Minnesota; Justine Grassie (age 30), who resides in Seattle, Washington; and Seth Grassie (age 25), who resides in Minnesota. According to Defendant, he does not have a close relationship with his children but has contact with them whenever they need financial assistance.

Defendant reported he has been receiving Supplemental Security Income since approximately 2016, due to retirement, and that he receives approximately $2,400 monthly. Defendant reported to Pretrial Services he was previously self-employed at Richard's Custom Water in Minneapolis, Minnesota for approximately thirty (30) years, i.e., from 1991 to March 2021, and earned approximately $30,000 to $40,000 annually. Defendant reported from approximately 1984 to 1987, he was employed as a Northern California Outside Sales

Representative for Natures Plus Vitamins. Defendant advised he has an estimated net worth of approximately $9,700, and currently owns a 2017 BMW X5 with an automobile loan of approximately $20,000. According to Pretrial Services, Defendant reported he has an estimated monthly cash flow of negative (-) $543.

Defendant reported he has a Canadian passport, which is currently with the case agent for the instant federal offense. According to immigration records, Defendant is legally residing in the United States as a permanent resident. Defendant reported to Pretrial Services the following travel outside of the United States: Zihuatanejo, Mexico in approximately 1978; Cancun, Mexico between approximately 1988 to 1993; and Australia in approximately 2019 or 2020. Defendant also reported he traveled to Puerto Rico in approximately 2019 or 2020.[3]

Defendant advised Pretrial Services he is in excellent physical health with no medical problems reported and takes magnesium daily to alleviate a sports injury from when he was approximately twenty years old. According to Pretrial Services, there is no evidence to suggest Defendant has a current or past mental health condition; however, Defendant reported that approximately thirty to forty years ago, Ms. Spradley encouraged Defendant to seek treatment to assist him with concentration and he was prescribed Wellbutrin at a facility in Minnesota. Defendant reported to Pretrial Services he is not currently taking any medication. Defendant reported he has used alcohol since age fifteen (15) with his last use approximately one month before his arrest and has used cannabinoids since age twenty (20) on a weekly basis with his last use approximately one week before his arrest. Defendant reported no criminal history. Ms. Cummings verified the information provided by Defendant to Pretrial Services.

---

[3] Puerto Rico is an unincorporated territory of the United States.

### III. DETENTION HEARING

The Court held a detention hearing on February 28, 2023 (the "Hearing"). The United States was represented by Assistant United States Attorney Chris Eason. Defendant was represented by Michelle Allen-McCoy.

Special Agent Louis Chang ("Agent Chang"), an agent for the United States Department Housing and Urban Development's ("HUD") Office of Inspector General ("OIG"), testified regarding the details of the alleged offenses and the investigation leading to Defendant's arrest.

Defendant is alleged to have participated in an investment fraud scheme and the "Meta 1" cryptocurrency scheme to defraud investors. Defendant was a board member of the Meta 1 cryptocurrency scheme and was working with several Sovereign Citizens including: Robert Paul Dunlap ("Mr. Dunlap"); Charles Sorensen ("Mr. Sorensen");[4] Alfred Warner ("Mr. Warner"); Wanda Warner ("Ms. Warner"); and Marianne O'Malley ("Ms. O'Malley"). Agent Chang testified Defendant, Mr. Sorensen, Ms. Warner, and Mr. Warner are former roommates and have each espoused "Sovereign Citizen" ideology. The Meta 1 cryptocurrency scheme has led to the defrauding of approximately eight hundred investors and losses of approximately $15,000,000 for investors. The Meta 1 cryptocurrency scheme was purported to be backed by approximately $1,000,000,000 in fine art and gold. Agent Chang testified Defendant laundered approximately $5,000,000 as part of the Meta 1 cryptocurrency scheme. Agent Chang further testified that the company of co-defendant Steven Tetsuya Morizono, also known as Jeff Lucian, ("Co-Defendant Morizono"), Jeff Funding, obtained a mortgage on behalf of a straw buyer client in December 2019. The mortgage application falsely claimed that the straw buyer, Ms. O'Malley, was employed

---

[4] Mr. Sorensen is currently indicted in the District of Minnesota for filing a false tax return, tax evasion, failure to file a tax return, and false claim. *See United States v. Charles Randall Sorensen*, 0:21-cr-196, (D. Minn. Sept. 16, 2021), Dkt. 1.

6

at Defendant's company, Richard's Custom Water, and Defendant falsely verified the straw buyer had an income of $162,000.

In February 2021, law enforcement agents investigating the Meta 1 cryptocurrency scheme and Co-Defendant Sorensen's federal tax case executed a search warrant of Defendant's home in Minneapolis, Minnesota. At this time, Co-Defendant Sorensen lived with Defendant as his roommate. While law enforcement agents executed the search warrant of Defendant's home in Minneapolis, Minnesota, they observed Defendant drive past his home in his white BMW X5. Defendant also changed his phone number after execution of the search warrant, did not return to his Minneapolis, Minnesota home, and abandoned his business, after which time his contractors took over. During the search of Defendant's Minneapolis, Minnesota home, law enforcement agents found checks from investors and emails attached stating to write such checks to Defendant—not Meta 1.

Agent Chang testified that law enforcement believes Defendant's co-defendant, Heather-Ann Campos ("Co-Defendant Campos"), fled to Defendant's residence in Plano, Texas after learning of her indictment and agreeing to self-surrender to law enforcement in January 2022. Rather than self-surrendering, Co-Defendant Campos fled and was observed by law enforcement at the Plano, Texas U.S. Post Office mailing "Cease and Desist" letters in a white BMW X5, which matched Defendant's vehicle. The following day, on January 25, 2022, Special Agent Mike Gross ("Agent Gross") searched for Co-Defendant Campos at Defendant's residence. Defendant refused to open his door and identify himself and any others within his household. On the same day, Defendant mailed his own "Cease and Desist" letter. Agent Chang also testified Defendant has received approximately $70,000 in wire transfers from several co-defendants to participate in Mr. Dunlap's "protection" program. Agent Chang testified this "protection" program involves co-

defendants becoming "Secured Creditors" that Sovereign Citizens incorrectly believe provides legal protection from federal law enforcement and removes them from the federal courts' jurisdiction. On January 26, 2022, several additional "Cease and Desist" letters were mailed from the Plano, Texas U.S. Post Office, and the postage was paid for by Ms. Cummings's debit card. On January 26, 2022, Defendant placed a flyer on his door stating, "NO TRESPASSING PRIVATE PROPERTY NO CONTRACTS". Approximately fifty letters using Sovereign Citizen language have been sent by Defendant, his co-defendants, and Mr. Dunlap to Assistant United States Attorneys, law enforcement agents, a U.S. Magistrate Judge, and a U.S. District Court Judge.

Agent Chang testified that Agent Gross conducted surveillance of Defendant driving his white BMW X5, and Defendant ultimately evaded Agent Gross's surveillance. On February 22, 2023, Agent Chang and other law enforcement agents executed an arrest warrant at Defendant's residence in Plano, Texas. During the execution of the arrest warrant, law enforcement agents found three individuals inside the home, identified themselves as police, and told the three individuals to put their hands up. Agent Chang testified that Defendant refused to put his hands up and stated to law enforcement agents that this arrest is "being done under duress" and "I don't consent to this arrest". Agent Chang further testified that law enforcement has not been able to locate the large sum of funds received by Defendant from his involvement in the Meta 1 cryptocurrency scheme. Following his arrest, Defendant admitted to law enforcement he was involved in the straw buyer purchase of properties, but had not financially benefited from these purchases.

Agent Chang testified Defendant's Sovereign Citizen ideology poses a serious risk of obstruction. Agent Chang testified that Sovereign Citizens believe the following: government

agencies are not real and tax laws do not apply to Sovereign Citizens; the United States federal government trades birth certificates on financial markets; the United States is a "private corporation"; and the Uniform Commercial Code ("UCC") provides a remedy for "free" people. Agent Chang testified Defendant's signature on his driver license, "Richard Grassie's Authorized Rep.", was evidence of Defendant's Sovereign Citizen ideology and Defendant previously told Agent Gross there was "no contract here". Agent Chang testified Defendant's statements regarding "Authorized Rep." and "no contract here" are related to Sovereign Citizen ideology. Agent Chang explained that Sovereign Citizens believe communications between persons can be disavowed by denying there are "contracts" between persons. Agent Chang further testified Defendant sent a "cease and desist" letter to Agent Gross using the "no contract" language and referring to Defendant as a "Secured Party Creditor and is Secured in Commercial Affairs" under the UCC with a signature as an "Authorized Rep." Agent Chang also testified Defendant stated he has diplomatic immunity.

During cross-examination, Agent Chang testified the white BMW X5 seen in the video footage does not show a visible license plate. Agent Chang also testified on cross-examination Defendant has not made Sovereign Citizen statements during court proceedings, has applied for both a U.S. driver's license and permanent residency in the United States, and has filed a financial affidavit for Court appointed counsel. Agent Chang also testified Defendant's bookkeeper and another individual informed law enforcement that Defendant espoused Sovereign Citizen ideology. Defendant did not proffer a third-party custodian.

In support of the Government's Motion for Detention, the Government proffered, without objection from Defendant, the following during the Hearing: the Government's PowerPoint Presentation titled *United States v. Richard Grassie*, 4:23-mj-84-KPJ, as Government Exhibit 1,

9

*see* Dkt. 6-1 at 1–18; Ms. Cummings's Composition Book, as Government Exhibit 2, *see* Dkt. 6-1 at 19–22; Co-Defendant Heather-Ann Campos's "Notice of No Authority" Letter to John Taylor Blackmore dated May 19, 2022, as Government Exhibit 3, *see* Dkt. 6-1 at 23–26; Co-Defendant Heather-Ann Campos's Termination Letter for Public Defender dated July 25, 2022, as Government Exhibit 4, *see* Dkt. 6-1 at 27–29; Chad Nicholas Epley's Cease and Desist Letter to Special Agent Michael Gross dated December 15, 2020, as Government Exhibit 5, *see* Dkt. 6-1 at 30–31; Record of Financial Activity related to an Identity Theft Complaint by Ms. Cummings dated October 31, 2019, as Government Exhibit 6, *see* Dkt. 6-1 at 32–36; and Certificate of Mailing dated September 10, 2019 to Denise McGlone CFO, Pentagon Federal Credit Union regarding Ms. Cummings, as Government Exhibit 7, *see* Dkt. 6-1 at 37–46; and Report and Recommendation of United States Magistrate Judge Mark Lane, *SEC v. META 1 Coin Trust, et al.*, 1:20-cv-273, as Government Exhibit 8, *see* Dkt. 6-1 at 47–55.

At the conclusion of the Hearing, the Court heard arguments from the Government and Defendant, respectively. The Government argued Defendant has espoused Sovereign Citizen ideology, is associated with Sovereign Citizens who are involved in the Meta 1 cryptocurrency scheme, is a risk of flight and has abandoned his home, and the financial information he has provided is likely false. The Government further argued Defendant has obstructed justice and has continued to receive money for the Secured Creditor "protection" program. Defendant argued the Government has failed to show by a preponderance of the evidence that Defendant is a flight risk. Defendant also argued he has resided in the same address in Plano, Texas for more than one year and that it is not clear Defendant knew Co-Defendant Campos failed to surrender to law enforcement agents. Defendant further argued the Government failed to show Defendant has espoused Sovereign Citizen ideology and Defendant has complied with court proceedings, filed a

10

financial affidavit for Court appointment of counsel, and has not espoused Sovereign Citizen ideology during Court proceedings.

## IV.   SECTION 3142(g) FACTORS

The Court finds, based on the evidence presented, that the Government has proven by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required. Additionally, the Court finds, based on the evidence presented, Defendant poses a serious risk that he will obstruct or attempt to obstruct justice.

### A. The Nature and Circumstances of the Charged Offenses and the Weight of the Evidence

The weight of the evidence against Defendant is strong and reveals Defendant's participation both in mortgage fraud and the Meta 1 cryptocurrency scheme.

During the execution of the search warrant of Defendant's residence in February 2021, law enforcement agents found checks from investors in the Meta 1 cryptocurrency scheme. Law enforcement agents further found emails attached to these checks that stated to investors they should make out the checks to Defendant rather than to Meta 1. Agent Chang testified Defendant is believed to have laundered approximately $5,000,000 as part of the Meta 1 cryptocurrency scheme. Agent Chang also testified this money has not yet been found by law enforcement agents. In *SEC v. Meta 1 Coin Trust, et al.*, U.S. Magistrate Judge Mark Lane found Defendant and others had been actively involved in the raising of approximately $15,200,000 from at least 800 investors through a "fraudulent and unregistered securities offering in the form of bogus crypto assets." *SEC v. Meta 1 Coin Trust et al.*, l:20-cv-273, (W.D. Tex. Mar. 16, 2020), Dkt. 134 at 3. U.S. Magistrate Judge Lane made the following additional findings as to Defendant's involvement in the Meta 1 cryptocurrency scheme:

11

> After the court froze [the] accounts, Meta[]1 investor funds were directed to accounts controlled by [Defendant] . . . [Defendant] continued a pattern established by Meta[]1 and Dunlap: open and use a bank account for a short period of time, deposit investor funds, spend investor funds on purposes not disclosed to investors, including the withdrawing of investor funds using cashier's checks to pay other related third parties, and then open a new bank account at a different bank to repeat the process again.

*Id.* at 5.

Furthermore, in the course of their investigation, law enforcement agents discovered Defendant was also involved in a mortgage fraud scheme. One of Defendant's associates, Ms. O'Malley, acted as a straw buyer and claimed to have been receiving an approximately $162,000 income from Defendant's business, Richard's Custom Water. Defendant falsely verified this income, although Defendant claims he was making considerably less money annually. Following his arrest in February 2023, Defendant informed law enforcement agents he was involved in the fraudulent mortgage applications and properties although he purports to not have received a financial benefit.

Based on the evidence presented, the Court finds that both the nature and circumstances of the charged offenses, along with the weight of the evidence to support such charges, favor detention.

**B. Defendant's History and Characteristics and the Nature and Seriousness of the Danger Posed by Defendant's Release**

Defendant is seventy-one years old and has no prior criminal history. Although these facts would typically weigh in favor of release, the Court is concerned Defendant's actions following the execution of the search warrant at his home in Minneapolis, Minnesota show he is a serious risk of flight and has both obstructed and will obstruct justice.

Defendant resided in Minneapolis, Minnesota and was self-employed at his company, Richard's Custom Water, for approximately thirty years. However, after the execution of a search

warrant in February 2021, Defendant appears to have both abandoned his own business and his home. Defendant reported he was largely transient for the following six to nine months after leaving Minneapolis, Minnesota before he settled in Plano, Texas. However, even then, there is evidence Defendant aided Co-Defendant Campos after she failed to self-surrender. When Agent Gross approached Defendant at his Plano, Texas residence to speak about Co-Defendant Campos, Defendant refused to speak and stated there was "no contract here". While Defendant has a clear Fifth Amendment right to refuse to speak with law enforcement agents, he did not simply remain silent. Rather, the evidence shows Defendant and Co-Defendant Campos mailed "Cease and Desist" letters to Agent Gross from the same Plano, Texas U.S. Post Office, mailed one day apart from one another, and using the same white BMW X5. In fact, Defendant's "Cease and Desist" letter appears to be merely a copy and paste of Co-Defendant Campos's letter, with Defendant's letter using nearly identical language throughout, including the following: "I, a woman, Jus soli, use LAWFUL MONEY and do not use commercial Federal Reserve Notes." Dkt. 6-1 at 8, 12. This evidence undermines Defendant's argument he was unaware Co-Defendant Campos failed to surrender.

Perhaps more troubling, Defendant received approximately $70,000 from other co-defendants to participate in Mr. Dunlap's "protection" program and provide "Secured Creditor" status to co-defendants. There is no question that under the First Amendment, Defendant has a right to express and support Sovereign Citizen ideology. However, in this case, the evidence shows Mr. Dunlap and Defendant's "protection" program has been established to seek to evade the federal courts' jurisdiction. Regardless of whether Defendant sincerely holds Sovereign Citizen beliefs, Defendant has acquired a large sum of cash that may be used for the purpose of flight. Furthermore, Agent Chang testified that Defendant is believed to have laundered approximately

$5,000,000 in support of the Meta 1 cryptocurrency scheme and this money has yet to be found. This is further evidence Defendant poses a serious risk of flight and has the means to support himself if he were to flee. Additionally, Defendant's fiancé, Ms. Cummings, has continued to aid co-defendants and other individuals participating in the Meta 1 cryptocurrency scheme. Specifically, Ms. Cummings notarized a number of the "Cease and Desist" letters sent to law enforcement, Assistant United States Attorneys, and judicial officers in the Southern District of Texas. *See* Dkt. 6-1 at 24–31. Ms. Cummings' notebook further reveals her awareness of the "protection" program and the Meta 1 cryptocurrency scheme, with such references as: "kycmeta1 – Trusts Process"; "spc [Secured Party Credit] will get submitted to Texas SOS [Secretary of State]"; "UCCI-SOS . . . Create = Trust . . . your['e] a creditor not a debtor". Dkt. 6-1 at 22.

Ultimately, Defendant's willingness to abandon his company and home, his aiding Co-Defendant Campos, his mailing of the "Cease and Desist" letter to Agent Gross, and his involvement in Mr. Dunlap's "protection" program all evidence Defendant is a serious risk of flight, and Defendant has obstructed, and is willing to continue to obstruct, justice.

## IV. CONCLUSION

For the reasons stated herein, the Government's Motion for detention is **GRANTED**. Defendant shall be detained pending trial and, is thus, remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver

Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**So ORDERED and SIGNED this 14th day of March, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE